White, J.
On the 22d day of August, 1904, Prank Wightman, a qualified elector of the city of Newburgh, Cuyahoga county, Ohio, filed in this court his petition contesting the election held on the 13th day of August, 1904, in the city of Newburgh, under the act of the General Assembly, “further to provide against the evils resulting from the traffic in intoxicating liquors” (97 Ohio Laws, page 87), commonly called the “Brannock Law.” On' the petition a summons was issued, under the. law, and served upon Fred Axel, mayor of the city of Newburgh, who inter *130 posed an answer to the petition on the 16th of September, 1904.
The question of procedure under the so-called Brannock Law in the probate court on the contest of an election, was raised by preliminary informal motions, and it had been decided by the'court in this case that the law casts upon the probate judge final jurisdiction to hear and determine the merits of the proceeding, without the intervention of aid of .“freeholders,” as provided by the law for the contest o'f an election of a justice of the peace, and that the procedure prescribing the duty to call three freeholders, by favor of Section 573, of the Revised Statutes of Ohio, as for the contest of an election of a justice of the peace, is not applicable to, and is inconsistent with, the exclusive jurisdiction devolving upon the probate judge on the petition to contest an election under the law.
The issue raised by the petition and answer, and now to be disposed of on its merits, is very simple, and yet while involving a single question, is not easy of satisfactory solution. The facts may be very briefly summarized.
The city of Newburgh is a municipal corporation, organized under the statutes of Ohio, 'having a mayor and council, and other corporate officers, constituting it a municipality. The territory of the city of Newburgh is bounded by somewhat irregular lines, and is erected out of part of the original township of Newburgh, and part of the township of Warrensville, and is contiguous, in part, to the boundary line of the city of Cleveland.
On the 20th day of July, 1904, there was filed with Fred Axel, who was then and is now duly elected and qualified mayor of the city of Newburgh, a petition which, omitting the signatures, is in the words following:
“A PETITION TO DETERMINE WHETHER THE SALE OE INTOXICATING LIQUORS AS A BEVERAGE SHALL BE PROHIBITED IN THE CITY OE Newburgh, Cuyahoga county, Ohio.
_ ‘‘To the Mayor of the City of Newburgh: We, the undersigned, respectfully represent that we are qualified electors O'f the city of Newburgh, county of Cuyahoga, and state of Ohio, and that we hereby request you to order an election to determine *131 whether the sale of intoxicating liquors as a beverage shall be prohibited in said city. Dated July 20, 1904.”
It is admitted by the pleadings that this petition was signed by at least forty per cent, of the qualified electors of the city of Newburgh. Construing this petition to invoke the exercise of his function as mayor, under the act of the General Assembly (97 Ohio Laws, 87), and commonly called the “Brannoek Law,” the mayor of the city of Newburgh, on the 25th day of July, 1904, made an order upon the board of deputy state supervisors of the county of Cuyahoga for an election, the order being in the following words:
‘1 This is to certify that a petition was presented to me on the 20th day of July, A. D. 1904, asking that an election be held under the provisions of the act entitled, ‘An act to further provide against the evils resulting from the traffic in intoxicating liquors, by providing for local option in residence districts of municipal corporations,’ passed by the General Assembly April 18th, and approved by the governor April 19th, 1904; that I have examined said petition and find that it contains the signatures of forty per cent, of the number of votes cast in said residence district described in said petition, at the last preceding general election, and I do hereby order that an election be held in said city of Newburgh, county of Cuyahoga, Ohio, in the following residence district, to-wit:
“All of the territory lying within the city limits of the city of Newburgh, county of Cuyahoga, Ohio; that said election be held at the usual voting places in said city, on the 13th day of August, 1904, between the hours of 5:30 a. m. and 5:30 p. m., Central Standard time, of said day: I hereby notify you to take charge, and supervise said election, as required by law.
“Fred Axel,

“Mayor of said city.”

And thereafter the mayor issued his proclamation for the holding of the election on the 13th day of August, 1904. Pursuant to the terms of this proclamation, and upon the petition and order as above set forth, an election was held on the 13th day of August, 1904, the same being conducted under the supervision of said board of deputy state supervisors, and otherwise in pursuance of the general provisions of the statutes of Ohio, providing the mode of conducting elections.
*132 In the answer filed to this petition, the mayor alleges in substance, “that he was and is the mayor, and a qualified elector of the city of Newburgh; that the district described in the petition for said election was and is now a clearly defined, continguous,' compact section and territory, bounded by corporation lines, and contained and contains more than three hundred qualified electors, and less than two thousand qualified electors, to-wit: seven hundred and eight electors. ’ ’ Then proceeding to state that the city of Newburgh, or the territory bounded by the corporate lines of .the city of Newburgh, constitutes it a residence district, as defined in 'Section 4 of the act commonly known as the Brannock Law, setting forth the description in the languauge of this section of the act containing the definition.
The sole and only question therefore presented, is raised upon the statement and allegations of the petition and answer, and, simply stated, is this:
Was the’ election, held in the city of Newburg on the 13th day of August, 1904, to determine whether the sale of intoxicating liquors as a beverage should be allowed or prohibited in said city, a legal valid election, it being held by favor, and under the provisions of the so-called Brannock Law, instead of under the act of the General Assembly further to provide against the evils resulting from the traffic in intoxicating liquors in municipalities in the state of Ohio, commonly known as the “Beal Law” (95 O. L., 287).
The contestor contends: 1st. That the petition by the citizens which constitutes, under the law, the jurisdictional act to invoke the election, was not framed or presented under the Brannock Law. 2d. It was not presented to the council of the city of Newburgh, as required by the provisions of the Beal Law, but was presented to the mayor, and by him mistakenly treated as a petition under the Brannock Law.
It is contended by counsel for the mayor that the election was regular and valid by reason of the fact that the entire city of Newburgh constitutes a “residence district” clearly within the terms and provisions of Section 4 of the Brannock Law, which provides that the phrase “residence district” as used in this act, shall be construed fo mean any clearly described, *133 contiguous, compact section 'or territory in a municipal corporation, bounded by streets, corporation, or other well recognized lines of boundaries, containing the -required number of qualified electors, and otherwise comporting with the limitations and conditions embraced in such statutory definition; and the fact that such “residence district” may be bounded by corporation lines clearly indicates the legislative intent, not to limit the operation of this law to a “residence district” in, or within, a municipal corporation.
It will not be ou-t of place for the court to take judicial notice of the fact that the territory now embraced in the city of Newburgh was recently a part of the remnants of the township of Newburgh, lying immediately east and south of the present boundary line of the city of Cleveland, and being an irregular shaped territory running for a considerable distance along the southerly line of the city of Cleveland. Until recently much of this territory was rural in its character, but it has been rapidly built up, and is now a prosperous neighborhood.
The only other point that is urged, is the point that the act itself is in conflict with the Constitution of the state of Ohio for several reasons, the strongest position urged as to the fatal defect and unconstitutionality of the law being that the “residence district” which is sought to be defined is made uncertain and ambiguous, and can not be so construed as to give it a uniform operation. The question of the constitutional and legal validity of the Brannock Law in question has been considered in several of the courts of the state, and notably in the ease of Jeffrey, Mayor, v. Ohio, ex rel, 4 C. C.—N. S., 494,* in which decisions the act has been upheld as not in' conflict with the Constitution. The obscure, involved, and ambiguous phraseology of the act, and its inconsistencies, are but the inevitable result of the conflicting, if not corrupting, influences and the legislative agitation which surrounded its enactment. In the light of the judicial discussion which has already been indulged, touching this law, it would seem inappropriate, if not presumptious, for a court of inferior jurisdiction to find the law to be absolutely invalid, and the point raised by the contestee *134 on this sjrbjeet having already been ruled in favor of the law, no further comment need be made on this proposition.
The proper disposition of the issue presented will require a cursory glance at the more recent history of legislation in the state of Ohio, dealing with the evils, or presumed evils, resulting from the traffic in intoxicating liquors. The legislative policy of local option on the liquor subject was inaugurated by an act passed on the 3d of March, 1888 (85 Ohio Laws, page 55), entitled, “An act to provide against the evils resulting from the traffic in intoxicating liquors, by local option in any township in the state of Ohio.” On April 3d, 1902, the General Assembly passed amendments and supplemental sections to the statutes already existing (95 Ohio Laws, 87), providing the statute familiarly known as the “Beal Law.” This law, together with the amended sections of the tax upon the traffic, known as the “Dow Law,” is intended to provide for local option in municipal corporations generally. Then, on the 19th of April, 1904, the act was passed and approved, commonly known as the “Brannock Law,” which is brought in question in the case at bar. These two enactments providing for local option by and in municipal corporations, are of a penal nature, and must- receive strict construction, so far as concerns their penal operation, under the • well known rules of statutory interpretation.
It is plain to ordinary observation that local option has been a progressive and growing policy in this state, first applying it to the unit of our political organization in the state, the township ; then to the municipal corporation as a whole; and then to parts of the municipal corporation, called “residence districts”; finally giving to urban population the right and power to deal with the traffic in the immediate vicinity of residences and homes.
The paramount purpose and intent of both the Beal Law and the Brannock Law is to afford an expression of popular sentiment on the subject of the liquor traffic. Thus the same end is sought to be achieved by both laws. The mode of procedure under these two statutes is not exactly the same. The general purpose is to elicit an expression of the public will, through the referendum or elective franchise.
*135 Both the penalties and the procedure, under the statutes, are slightly different. In the penal provision, under the Brannock Law, the place where intoxicating liquors are sold, after the second offense, is declared a nuisance, and may be abated, or the offender required to give bond, conditioned as the statute prescribes. No imprisonment is provided for. Whereas under the Beal Law no nuisance can be declared, and the law inflicts a penalty which may include imprisonment.
In regard to the procedure, the variance is more marked. Different authorities are to be invoked to order the election. The rules in regard to construing the petition are different. The proceedings in respect to contesting the election, and as to the parties who may appear to defend an such contest, are divergent. It may be said that these are very slight divergencies, and manifests the legislative intent that either statute may be resorted to indiscriminately by either entire residence municipalities, or residence districts of municipalities containing business sections, and that it is optional with the people, these conditions justifying the use of one or the other law, whichever they shall select.
There is another very important consideration which must enter into the disposition of this case. In order to set aside the election, the court must be satisfied by a fair and impartial application of the law to the admitted facts that the election be held on the 13th day of August, 1901, m the city of New-burgh, was absolutely illegal and void. It -must be admitted that there is no contention here that there was any deception, fraud, or indirection practiced by the mayor or other officers-; that there was no elector prevented from casting his ballot, by reason of the error complained of; and that the contest at the polls was fairly -and regularly fought out. The result of the election must be taken as the fair and open expression of public will and opinion upon the subject of the liquor traffic in that municipality. Admitting, as we must, that no prejudice, default, or injury is shown by the contestor, and admitting that the election itself, on that day, was conducted regularly and legally, what good reason is shown why such election should not be upheld ?
*136 The exercise of the right to hold the election was sought under the Brannock Law, and under no other statute of the state. On this proposition there can be no doubt. If this law, the last upon the statute books upon the subject, permits, in a proper case, of an election in an entire municipality, the case must be decided in favor of the election. This is the vital point in this controversy.
It is insisted that in making the liquor traffic subject to the elective 'franchise in “residence districts,” the Legislature has passed an act which may apply to entire municipalities. That in a proper ease it has superseded and repealed the earlier law known as the Beal Law, which by its terms applies to entire municipalities. This is the logical outcome of the position of the eontestee. Now to properly invoke -the exercise of power under these acts, the initial step is fundamental and jurisdictional. Under the Beal Law, the petition of the electors is addressed to the city council. Under the Brannock Law, the petition is addressed to the mayor or j-udge of the court of common. pleas of the county. Thus, in one ease, the authority to order the election is legislative, and in the other case, either ministerial or judicial. In the case of the earlier law, in which the entire municipality is presumed to be interested, the legislative body which is granted power to- enact ordinances and police regulations is the -tribunal -to be invoked. Under the Brannock Law, under which the petition describing the residence district and the proper percentage of electors are controlling conditions, it must be submitted ;either to the mayor, or to a judge of the court of common pleas. The purpose of this distinction must appear manifest upon even a slight consideration. The election in the entire municipality is brought under the -control of a representative, legislative body. The more exacting legal requirements of the initial step, under the Brannock Law, are confided to the scrutiny of either the chief officer of the municipality, whose functions are partly executive and sometimes judicial, or to the scrutiny of a judge, who is presumed to be able to impartially and critically scrutinize the situation, and determine the legal quality of the petition. To order the election, then, is a judicial act, and lies at the foundation of the whole subsequent proceeding.
*137 This case has been ably argued by learned and industrious counsel on both sides. It appears to the court that there is much force in the contention of the eontestor in the proposition that if the Brannock Law can, in any case, be applied to an entire municipality, the Legislature has placed upon the statute books two laws upon the same general subject, which are manifestly in conflict. The rule, then, if the attempt, by construction, to render the operation of both consistent and harmonious fails, is that the latter statute biust repeal the former. The cases cited by counsel clearly sustain this proposition (98 Mass., 480; 11 Wallace [U. S.], 92; 98 Ind., 332). It is clearly held in the state of Ohio that a repeal of the former statute, by implication or by judicial interpretation, is abhorred by the courts, or at least not favored (2 O. S., 210). A recent decision to which counsel call the attention of the court is, The City of Cincinnati v. Connor, 55 O. S., page 82. The court, on page 88, say:
“The proposition .advanced by counsel for the plaintiff in error, as stated in the brief, is that: ‘where two sections of the Revised Statutes apply to the same subject-matter, one or both should be so limited as to give force and effect to both. ’ * * *
“The proposition may be accepted as sound, without admitting the consequences supposed to flow from it. We recognize it to be a well settled rule of statutory interpretation that: ‘Where a general intention is expressed, and also a. particular intention which is incompatible with the general one, the particular intention shall be considered an exception to the general one,’ and hence, ‘if there are two acts, or two provisions in the same act, of which one is special and particular, and clearly includes the matter in controversy, whilst the other is general, and would, if standing alone, include it also; and if, reading the general provision side by side with the particular one, the inclusion of that matter in the former would produce a conflict between it and the special provision, it must be taken that the latter was designed as an exception to the general provision. ’ ’ ’
Again on page 89, the court say:
“It is an equally well established rule, that the provisions of a statute are to be construed in connection with all laws in pari •materia, and especially with reference to the system of legislation of which they form a part, and so that all the provisions *138 may, if possible, have operation according to their plain import. It is to be presumed that a code of statutes relating to one subject, was governed by one spirit and policy, and intended to be consistent and harmonious in its several parts. And where, in a code or system of laws relating to a particular subject, a general policy is plainly declared, special provisions should, when possible, be given a construction which will .bring them in harmony with that policy. And it is only when, after applying these rules in the endeavor to harmonize the general and particular provisions of a statute, the repugnancy of the latter to the former is clearly manifest, that the intention of the Legislature as declared in the general language of the statute is superseded.”
In the spirit of this judicial rule, what is the relation of these two distinct acts upon the same subject? It is virtually claimed by the contestee that the Brannock Law is a mere amendment to the Beal Law, and that they are not distinct legislative enactments, so far as their practical operation is concerned, and whenever the facts warrant it, either act may be applied to the proper situation indiscriminately. ,
Both statutes are penal. Let us put the case in this way: Suppose the election on the 13th of August, 1904, in the city of Newburgh, had resulted in the prohibition of traffic in intoxicating liquors in that city, the election having.been called and ordered as it was in this case. For aught the court knows, it may have been so. Suppose prosecutions had been instituted against persons after thirty days, who persisted in unlawfully carrying on the liquor traffic. What would have been the proper interpretation of the statute, as applied in such criminal proceedings ? Can there be any question that the irregular and mistaken call for the election would not be held to have vitiated the entire election, and can it be doubted that such would have been a valid and prevailing defense against any such prosecution? This seems to me to be a fair test of the strength of the position of the contestee.
But there is another feature of this case which seems to illustrate clearly the divergent operation of these distinctive statutes. The petition which was presented to the mayor "of the city of Newburgh on the 20th day of July, 1904, is quoted in the petition which I have already read, -It will be observed *139 that it does not attempt to describe any residence district in the city of Newburgh, or any other district. The territory in which the election is to be held, to determine whether the sale of intoxicating liquors as a beverage shall be prohibited is simply stated to be “the city of Newburgh.” The petition which is required to be filed, under the Brannock Law, by Section 3 of said act, is required to contain a description of the residence district, and by Section 4, the definition of the phrase “residence district” is sought to be afforded. Just criticism upon the grammatical construction of this section may be made, but this effort to define the phrase by a statutory definition, evidences the legislative intent to confine the operation of this statute to places and territory which are residential, in which only a certain percentage of business property can be included. This feature especially characterizes this act, and distinguishes it in a marked manner from the other laws 'governing the same subject-matter.
It may be said that the mayor would be presumed to know whether the city of Newburgh was in proper proportion residential territory, or was a business district, and therefore it was not necessary, in addressing the petition to him, to describe the character of the city of Newburgh, whether it was exclusively for residences, or in the proper proportion a residence district. But this does not answer the case. "When a petition is presented to the mayor of the city of Cleveland by any residence district, the law does not presume that the mayor has knowledge of the fact that the district in which the election is required is a residence district, but it must be set out, by proper metes and bounds, to comply with the peculiar, detailed and exact requirements of the statute.
The answer of the contestee in this ease seeks to import into the ease the fact that the city of Newburgh is a residence district; that it is “a clearly described, contiguous, compact section and territory, bounded by corporate lines, and containing the number of qualified electors,” etc. It must be conceded, I think, that bringing this fact onto the record does not supply its absence from the petition, 'and this petition must be dealt with just as it was presented to the mayor of Newburgh.
It may be regretted that the conclusion to which the court has come may be athwart the popular sentiment of the city of *140 Newburgh, and result in setting aside their expressed wishes at the polls. The court is not responsible for the fact that, in the trial of a contested election under the Brannock Law, the probate judge has “final jurisdiction to hear and determine the merits of the proceeding.” If the election is clearly and conclusively shown to be irregular and illegal from its inception, whatever may be the opinion or sentiment of the court upon the general subject, the result must be the same.
Dunning, Tracy, Morrow & Hathaway, and Herrick & Hopkins, for the petitioner. ■
Wilcox, Collister, Hadden & Parks, and W. C. Pollner, for Fred Axel, Mayor of the City of Newburgh.
The conclusion which the court has reached, therefore, may be summed up as follows:
1st. The election in the city of Newburgh on the 13th day of August, 1904, -on the question of the liquor traffic, was sought to be instituted and carried forward under the act (97 Ohio Laws, 87) commonly known as the “Brannock Law,” and not under 95 Ohio Laws, 87, commonly known a® the “Beal Law.”
2d. The petition under which said election was held was addressed to the mayor, and to have made the election legal under the Beal Law should have been addressed to the city council of the city of Newburgh.
3d. The petition- made by favor of 97 Ohio Laws, page 87, is a fundamental and jurisdictional act, and must substantially comply with the requirements of said act.
4th. The petition filed with -the mayor -of the city of New-burgh, on the 20th day of July, 1904, invoking the election held on the 13th day of August, 1904, was defective in that it did not describe any residence district in the -city -of Newburgh, nor describe the entire city as being a residence district, or residence corporation.
It is held therefore that the election held on the 13th day of August, 1904, was illegal and void, and must be set aside, and the petition of the contestor granted.

 Affirmed by the Supreme Court without report, May 2, 1905,